## Charles Gualdoni, Appellant, v. Marion Robinson et al., Appellees.

1. CONVERSION—*wrongful taker of goods liable for loss thereof without his fault.* It is error, in trover for the wrongful taking of certain packages of whisky from the possession of the plaintiff, to instruct the jury that before they can find the defendants guilty they must find that they not only took into their possession the goods in question but that they unlawfully converted the same to their own use or destroyed it, since defendants were liable for the destruction of the liquor, even without their knowledge or consent, while in their possession, if it was taken without authority of law.

2. CONVERSION—*when proof of offense complete by proof of wrongful taking.* In trover for the wrongful taking of certain packages of liquor which were taken from the possession of employees of plaintiff by defendants at the city limits and there-after transported to the city hall, it was error to instruct that certain of the defendants could not be found guilty unless the evidence showed that such defendants "took, advised or assisted in taking and putting" the goods into the city hall, since they would be guilty if the evidence showed that they wrongfully took, aided or assisted in taking the property from plaintiff without proof that they had any part in placing the goods in the city hall.

3. CONVERSION—*sufficiency of proof of ownership in plaintiff where goods wrongfully taken from his employees.* In trover for the wrongful taking and destruction of certain intoxicating liquor, ownership by plaintiff is sufficiently shown by evidence that the liquor in question was taken from employees of plaintiff in his absence and that the liquor "was his."

4. CONVERSION—*when directed verdict as to one of several de-fendants erroneous.* A directed verdict of not guilty as to one of several defendants in trover for the wrongful taking of certain

intoxicating liquor from the possession of plaintiff was erroneous where the evidence showed that such defendant accompanied the other defendants, furnished the conveyance in which some of them rode to the scene of the taking, and assisted them in arresting plaintiff's employees who were in charge of the liquor and in taking possession of the liquor.

5.  CONVERSION—*offense predicated on wrongful taking complete with such taking.*  Defendants who participated in the actual wrongful taking of plaintiff's goods were guilty of conversion thereof, notwithstanding they had no part in the subsequent disposition of such property.

6.  CONVERSION—*unlawful seizure and destruction of intoxicating liquors legally owned as conversion.*  The seizure of intoxicating liquors by city officers without any warrant, prior to the enactment of the Search and Seizure Act of 1917, and the Prohibition Act of 1919, as such liquors were about to be transported through a prohibition town, and the subsequent destruction of such liquors, constitutes conversion where such liquors were lawfully acquired by the owner.

Appeal by plaintiff from the Circuit Court of Franklin county; the Hon. JULIUS C. KERN, Judge, presiding.  Heard in this court at the March term, 1923.  Reversed and remanded.  Opinion filed July 2, 1923.

SEEBER & SPILLER, for appellant.

WILLIAM H. HART, WILLIAM W. HART and MARION M. HART, for appellees.

MR. PRESIDING JUSTICE BOGGS delivered the opinion of the court.

An action in trover was brought by appellant against appellees in the circuit court of Franklin county to recover for the alleged wrongful taking of two barrels and five cases of whisky.  Said suit ran to the September term, 1915, but was not tried until the September term, 1922.  The jury returned a verdict of not guilty and judgment was rendered thereon against appellant in bar of action and for costs.  To reverse said judgment this appeal is prosecuted.

In July, 1915, appellant had sent two men with a

team·to Christopher to haul from there to Sesser, appellant's home, two barrels and five cases of whisky. The men reached Sesser with the load of liquor at about eleven o'clock at night and were met at the corporate limits of the village by appellees and some other persons. The two men driving the wagon were arrested and were taken to the city hall. Mr. Pate, the president of the village board, and two police officers and a Mr. William Huie were all present when the wagon was stopped and the drivers arrested. The evidence discloses that appellees went in Huie's automobile to the city limits where they put out their light and waited from eight o'clock until the employees of appellant approached with the liquor. The liquor was taken from the wagon and placed in the city hall. Appellant secured a replevin writ, but failed to recover his property. Shortly after this, appellant learned that the heads of the barrels had been knocked in, the bottles had been broken and the property had been destroyed. Thereafter this suit in trover was instituted.

It is first contended by appellant that the verdict of the jury is against the manifest weight of the evidence and contrary to the law as laid down in the instructions given by the court on his behalf. This case will have to be reversed for errors in the ruling of the court on the instructions and for that reason we will not discuss the weight of the evidence.

It is next contended by appellant that the court erred in the giving of each of the six instructions given on behalf of appellees. Appellees' first instruction is more or less argumentative in form and its tendency was to mislead the jury and should not have been given.

Instruction No. 2 is as follows: "The Court instructs the jury that before you can find the defendants guilty of the charge in the declaration, you must find from the preponderance of the evidence that the

defendants not only took into their possession the property described in the declaration herein, but that they unlawfully converted same to their own use, or destroyed the same, and unless you so find from the preponderance of the evidence, you should find the defendant not guilty." The giving of this instruction was erroneous for the reason that if the liquor in question was taken by appellees without authority of law and the same was afterwards destroyed, while in the possession of appellees, even though without their knowledge or consent, they would still be liable. *Suppiger v. Gruaz,* 137 Ill. 216; *Scott v. Rogers,* 56 Ill. App. 571.

In *Suppiger v. Gruaz, supra,* the court at page 223 says: "By the judgment of the court the taking and detention of the property was wrongful, and we are aware of no principle under which a wrongful taker of property can shield himself from liability on the ground that after the wrongful taking the property has been destroyed by accident. In *Suydam v. Jenkins,* 3 Sandf. (N. Y.) 644, in discussing this question, it is said: 'We have seen that the defendant in trover or trespass is in all cases responsible for the value of the property when taken or converted, and certainly it has never been supposed that he can discharge himself from this responsibility, in whole or in part, by showing that the property has been destroyed or injured by inevitable accident after he had obtained possession.' "

In *Scott v. Rogers, supra,* the court at page 574 says: "Plaintiffs in error offer no argument in support of any but the fifth (plea). That reads: 'And for a further plea in this behalf, defendants say that the plaintiff ought not to have his action against them, because they say the death of the property in question was an act of God, and that they are not liable therefor, and this they are ready to verify.' Aside from the objection that the plea does not aver that the prop-

erty died after the institution of the replevin suit, the plea is bad because one who wrongfully takes the property of another, although under a writ of replevin, cannot escape liability for the value of the property by showing it was destroyed by an act of God. Cobbey on Replevin, sec. 830; *Suppiger v. Gruaz,* 137 Ill. 216.'' The court erred in giving this instruction.

Appellees' instruction No. 3 is of the same character as instruction No. 2, and the court erred in giving the same.

Appellees' given instruction No. 4 is erroneous for the reason that the jury were advised that before appellees Robinson and Williams could be found guilty the evidence must show ''they took, advised or assisted in taking and putting the property described in the declaration into the city hall,'' whereas said parties would be liable if the evidence showed that they wrongfully took, aided or assisted in taking said property from appellant without also showing that they assisted in putting said property in the city hall.

Appellees' instruction No. 5 is argumentative. Its tendency was to mislead the jury and the same should not have been given. Instruction No. 6 is erroneous for the reasons stated with reference to instruction No. 2.

Appellees insist that notwithstanding the instructions given on their behalf are not entirely without error, the judgment should be affirmed for the reason that the evidence fails to show ownership on the part of appellant of the property in question, it being the contention of counsel for appellees that sufficient proof of ownership was not contained in the record. The record discloses that the men in charge of the liquor at the time it was taken by appellees were in the employ of appellant. Under the law, therefore, their possession would be appellant's possession.

The record further discloses that on recross examination by counsel for appellees, one of the men in

charge of said liquor testified that, "Charles Gualdoni did not have possession of what we had in the wagon. It was his, but he was not with us." The jury were therefore warranted in finding that the property in question belonged to appellant.

At the close of all of the evidence the trial court, on motion of defendant, Huie, directed a verdict of not guilty as to him and this ruling of the court is assigned as error. Without going into a detailed discussion of the evidence in the case, it is sufficient to say that the evidence discloses that the defendant Huie was one of the participants in taking possession of the liquor in question. He himself testified that he was present when Matt Reva, one of the parties in charge of said liquor, was arrested; that "the boys asked me to go with them and I took them there in my car to assist them in looking for this booze; I was not an official, and my only interest was in enforcing the law. They arrested Marillo (one of the men in charge of the liquor) and he rode in the car with me. Bob Hill drove the wagon to the City Hall. Reva was there in the wagon when I first saw him, and so was Marillo; they went pretty fast to get away from the boys, and when my car wouldn't start some of the boys ran across lots, and when I got the car started I caught up with them and they jumped on, and when we got up even with the wagon they jumped off the car and went to the wagon; I don't think anyone got on the wagon but Bob and Barney, Pate went towards the wagon. I went twenty or thirty feet ahead of the wagon and waited there till they made the arrest. They brought John and put him in the car. My recollection is that Ott Williams was there; I know Pate and Marion Robinson went down in the car with me, but I am not sure about Williams, and I know Barney and Bob did. We were ambushed there waiting for the wagon to come along, with the lights on the car turned out." In view of this and other evidence in

the record, we are of the opinion and hold that the court erred in instructing the jury to find the defendant Huie not guilty.

It was also contended by counsel for appellees that none of them were guilty because they did not themselves put the liquor in the city hall, the same having been placed therein by one Hill and one Barney Jones. This point is not well taken as the law is that one who aids, abets, assists or encourages in the perpetration of a trespass is liable equally with the actual perpetrator. *Roth v. Smith*, 41 Ill. 314; *Northern Trust Co. v. Palmer*, 171 Ill. 383. Hill died subsequent to that time and prior to the trial of said cause, and Jones had removed from that county and his whereabouts is not shown.

It appears from the record that Marillo and Reva, the men in charge of the liquor, were arrested for transporting or attempting to transport liquor through said village, and the cause was tried by appellees on that theory as stated on page 3 of their brief: "Marillo and Reva were working for him (appellant) and he sent them after the whisky, and it was clearly the illegal transportation of liquor for bootlegging purposes."

It must be remembered, in connection with the decision of this case, that the liquors in question were seized without a warrant of any kind and prior to the enactment of the Search and Seizure Act, in 1917 and to the Prohibition Act, enacted in 1919. The case must therefore be determined as the law existed prior to 1917. In *City of Jacksonville v. Chicago & A. R. Co.*, 274 Ill. 152, the city had in December, 1913, passed an ordinance which provided, among other things: "It shall be unlawful for any express company, railroad company or other common carrier, or for any person, to bring into or to deliver to any person within the City of Jacksonville any intoxicating liquor."

Gualdoni v. Robinson, 230 Ill. App. 228.

The suit in question was instituted by said city against said railroad company for a violation of said ordinance. The court, in discussing the power of city councils and village trustees to pass an ordinance of this character, at page 156, says: "Councils of cities, and the boards of trustees of villages are authorized to prohibit sale of intoxicating liquor and have ample power to make prohibition effectual by prohibiting every device whereby the evasion of the prohibition may be accomplished. This power, however, is limited by the legislative grant. It does not extend to the destruction of property, the right to own which the legislature recognizes. * * * Intoxicating liquor is held in this State by the same title as any other personal property and may be purchased and sold in places, where its sale is lawful, the same as any other personal property, and the owner's title to it is as indefeasible, subject to the regulations enacted by the legislature or by municipalities in conformity with the power granted by the legislature. When the case of beer was delivered to the railroad company at Bloomington, it became the property of the purchaser and he had the right to carry it where he chose, though he could not sell it in Jacksonville and could not sell the liquor without license. He had a right to keep it, to use it himself and to transport it wherever he chose."

The court further says on page 158: "The law which authorized the city council to license, regulate and prohibit the sale of intoxicating liquor did not authorize it to prevent the transportation of such liquor by common carrier into the city. The ordinance is without authority of law and is void."

For the reasons above set forth the judgment of the trial court will be reversed and the cause will be remanded.

*Reversed and remanded.*